USCA1 Opinion

 

 May 27, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-2438 ANIBAL BAEZ VELEZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH & HUMAN SERVICES, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ___________________ Before Torruella, Cyr and Boudin, Circuit Judges. ______________ ___________________ Cristina Munoz Gandara on brief for appellant. ______________________ Daniel F. Lopez Romo, United States Attorney, Jose Vazquez _____________________ ____________ Garcia, Assistant United States Attorney, and Nancy B. Salafia, ______ ________________ Assistant Regional Counsel, Department of Health and Human Services on brief for appellee. __________________ __________________ Per Curiam. Claimant, Anibal Baez Velez, appeals __________ from a district court decision affirming the denial of his application for Social Security disability benefits. Claimant alleges that a fractured wrist and dislocated hip and the resulting pain therefrom have left him disabled. The Administrative Law Judge (ALJ) concluded that although claimant's impairments were severe, they did not meet or equal a listed impairment. Claimant was prevented from performing his past work as a construction worker and fast food restaurant crew member, the ALJ concluded, but was not precluded from performing a significant number of other jobs in the national economy which require sedentary to light work. In so concluding, the ALJ found that claimant's allegations of severe and disabling pain were not credible. We affirm. Background __________ Claimant was born in 1967. He completed high school and one year of college and has worked in the construction business and in fast food restaurants. On November 22, 1989, claimant fell from a second story, sustaining the injuries complained of in his application for disability payments. He has not worked since then. Claimant was admitted to the hospital following his fall and was diagnosed with a fracture of his right wrist, a dislocation of his left hip and -2- fractures of several ribs. He stayed in the hospital for fifteen days. Claimant filed an application for Social Security disability benefits on September 5, 1990, alleging inability to work due to the following severe impairments: [M]y left hip always gives away (fails me) and I feel too much pain. And my right wrist doesn't function as it did before and frequently hurts. . . . I don't have the same strength that I had before in my right hand; I can't lift heavy objects because I feel pain; when I remain seated for an extended period of time and try to get up, my left hip becomes stiff and fixed in place and it hurts a lot; if I stand for extended periods I begin to suffer from back pain and hip pain. The Social Security Administration denied claimant's application initially and on reconsideration. Claimant obtained a hearing before an ALJ on July 18, 1991. Claimant was represented by counsel. A Vocational Expert also testified at the hearing. The ALJ, in a decision dated August 27, 1991, concluded that claimant "has status, post-fracture of right radius dislocation of left hip with minor residuals" but that these impairments are not listed or medically equal to those listed at 20 C.F.R. Pt. 404, Subp. P, Appendix 1, ("Appendix 1"). With respect to claimant's allegations of pain in his arm, back and hip, the ALJ found them to be "credible so as to preclude arduous exertion, repeated bending, continuous standing and walking." The ALJ rejected appellant's contention, however, that his pain was "of such severity and frequency as to preclude substantial -3- 3 gainful activity." The ALJ found that claimant was precluded from performing his past relevant work, but that he "has the residual functional capacity to perform a wide range of light to sedentary work." The ALJ therefore concluded that claimant was not disabled within the meaning of the Social Security Act at any time prior to the date of that decision and, accordingly, was not entitled to disability payments.1 Claimant's request for review by the Appeals Council was denied, and on January 17, 1992, claimant filed a complaint with the district court seeking review of the ALJ's decision, pursuant to 42 U.S.C. 405 (g). The district court affirmed the ALJ's denial of disability payments in a decision dated October 15, 1992. The district court found that the ALJ "properly discussed in his decision the reasons why he did not find plaintiff's subjective symptoms of pain credible" in accordance with the requirements of Avery v. Secretary of _____ ____________ Health and Human Services, 797 F.2d 19, 22 (1st Cir. 1986), _________________________ and "took into account evidence such as plaintiff's daily activities and observations of examining doctors in reaching his conclusion, as well as the testimony of a vocational expert." (Citations omitted.) Medical Evidence ________________ ____________________ 1. The ALJ found that claimant met the disability insured status requirements of the Social Security Act on the date of his accident and continued to meet them through at least June 30, 1990. The exact date on which claimant's insured status expired was uncertain because of unposted 1989 earnings. -4- 4 Since his accident, claimant has been seen by doctors at the State Insurance Fund (S.I.F.) and by a private orthopedic surgeon, Dr. Alfredo Pinero Pereira. While in the hospital, claimant's hip was treated with "Buck's traction" and on December 5, 1989, Dr. Pinero performed an "external fixation and closed reduction" on claimant's right wrist. On December 19, 1989, Dr. Pinero examined claimant and reported that there was decreased external rotation in his left hip, but that he had full flexion and no "neurovascular deficit." His right wrist was tender and his flexion was decreased, but he could fully extend his fingers and had no sensory deficit. Dr. Pinero prescribed physical therapy and ordered a CT scan and follow-up visit. In February, 1990, claimant complained to an SIF doctor of pain in his pelvis. A CT scan of claimant's pelvis performed on February 20, 1990 showed small linear calcification in the joint space and small calcifications in the acetabulum and in the femoral neck. The radiologist's report indicated that the calcification in the joint space might represent an interarticular osseous fragment. The other calcifictions were compatible with myositis ossificans.2 Dr. Pinero saw claimant again in April, 1990 ____________________ 2. Myositis ossificans is the inflammation of a muscle characterized by bony deposits or ossification of muscles. R. Sloane, The Sloane-Dorland Annotated Medical-Legal Dictionary _____________________________________________________ (1987). -5- 5 and reported that he had full range of motion in his hip, except that he still had decreased external rotation. Dr. Pinero warned claimant that he might develop arthritis in his hip if osteochondral fragments were not removed from the joint. Claimant saw an SIF doctor on April 25, 1990 and complained of pain in his hip. Notes from that visit indicate that he limped a little and had limited anterior and posterior flexion. Physical therapy was recommended. On May 2, 1990, claimant saw an SIF doctor again. The record shows that claimant had markedly limited range of motion in his wrist, reduced grip strength and mild engrossment. He was able to make a tight fist. Claimant complained of constant wrist pain, but did not experience numbness. He indicated that he used his wrist for activities of daily living, but could not lift heavy objects. Physical therapy was recommended to increase claimant's range of motion and strength and to decrease his pain. The record from a May 14, 1990 visit with Dr. Pinero indicates that claimant had 80% supination and full pronation of his wrist. The doctor ordered a wrist x-ray and a follow-up appointment in four weeks. A May 18, 1990 report from the SIF indicates that claimant had reported no benefit from physical therapy, but that his grip strength had increased. Claimant's range of -6- 6 motion had increased slightly, although it remained markedly limited. A May 21, 1990 report from Dr. Carlos Fuxench, an SIF physiatrist, indicated that claimant was able to make a fist and that the range of motion in his finger joints was complete. Dr. Pinero examined claimant on June 25, 1990. He indicated that claimant had full range of motion in his hip, but that external rotation was painful. He diagnosed post-traumatic degenerative joint disease of the left hip.3 In September, 1990, claimant visited an SIF doctor again and reportedly complained of pain in his wrist and hip. The doctor noted that claimant was leaning on a cane to walk, which exacerbated the pain in his wrist. A November 5, 1990 report from the SIF indicated that claimant complained of pain in his wrist, but that there was no edema and that flexion and extension were accomplished with difficulty. Dr. Torres from the SIF examined claimant on November 14, 1990, and noted that the pain in claimant's hip was intermittent and worsened when he leaned forward. Although the area was tender, Dr. Torres reported that claimant had full range of motion and muscle strength in his left hip. He also reported ____________________ 3. Degenerative joint disease is characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. "It is accompanied by pain and stiffness, particularly after prolonged activity." The Sloane-Dorland Annotated Medical- ______________________________________ Legal Dictionary. ________________ -7- 7 that claimant was walking adequately unassisted. He diagnosed trochanteric bursitis.4 Continued pain medication and stretching exercises were prescribed. In December, 1990, the SIF doctors prescribed 20 mg/day of Feldene (a medication given to inhibit inflammation and pain). Claimant complained of pain in his wrist and hip. In January, 1991, Dr. Pinero saw claimant and reported that he complained of intermittent episodes of pain. He noted that the hip dislocation would probably lead to arthritis, requiring further surgery, but that claimant wanted to postpone surgery until the pain became intolerable. Dr. Pinero recommended x-rays. The x-ray report indicated "no evidence of recent fracture, soft tissue calcifications or other complication" in claimant's wrist. The x-ray showed a "deformity in the distal radius and the ulnar styloid, presumably result of an old healed fracture." The hip x-ray indicated "a bony projection arising from the greater trochanter of the femur which may be related to tendinitis or to previous traumatic episodes." There was no evidence of a present or past hip fracture and the "sacroiliac and coxofemoral joint spaces" were preserved. ____________________ 4. Bursitis is the inflammation of a bursa, "a sac or saclike cavity filled with viscid fluid and situated at places in the tissues at which friction would otherwise result." The Sloane-Dorland Annotated Medical-Legal _________________________________________________ Dictionary. __________ -8- 8 Claimant's final reported visit with Dr. Pinero was on February 5, 1991. The doctor reported that claimant complained of hip pain, but that he had full flexion, internal rotation and abduction in his hip, and 40% external rotation. The report noted that the x-rays showed post- traumatic degenerative joint disease which might explain pain symptoms. Dr. Pinero also noted that avascular necrosis is another complication that can occur with degenerative joint disease and explain pain.5 Finally, Dr. Pinero recommended that if conservative treatment fails, claimant "could be a candidate for hip fusion." On March 20, 1991, claimant saw an SIF doctor. Although claimant complained of pain in his hip and wrist, the report noted no edema and no deficit in flexion-extension and that fingers close. No difficult gait was observed. Finally, a June 20, 1991 report from an SIF doctor stated that claimant is not willing to undergo a hip fusion, although he still complained of pain in his hip and forearm. Discussion __________ On appeal, claimant argues that the decision to deny him disability benefits is not supported by substantial evidence. Claimant specifically contends that the finding that ____________________ 5. Avascular necrosis describes "the sum of morphological changes indicative of cell death" caused by deficient blood supply to the affected area. The Sloane-Dorland Annotated _____________________________ Medical-Legal Dictionary. ________________________ -9- 9 claimant's medical condition does not meet or equal listing 1.03 (arthritis of a major weight-bearing joint) in Appendix 1 of the regulations was erroneous and that the district court, in affirming the denial, failed to give proper credit to claimant's subjective complaints of pain. The Social Security Act establishes the following standard of review in this case: "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, . . . " 42 U.S.C. 405(g). Therefore, the Secretary's decision to deny claimant disability payments in this case must be affirmed "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Secretary of Health & Human _________ ______________________________ Services, 647 F.2d 218, 222 (1st Cir. 1981). "It is the ________ responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence." Ortiz v. Secretary of Health and Human Services, 955 F.2d _____ ________________________________________ 765, 769 (1st Cir. 1991) (Per Curiam). Following the sequential steps set forth at 20 C.F.R. 404.1520, the ALJ first found that claimant had not worked since January 22, 1989. Second, he determined that claimant had a severe impairment, termed "musculoskeletal involvement." Third, the ALJ concluded that claimant's impairments did not meet or equal the criteria in the Listing -10- 10 of Impairments in Appendix 1 of the regulations. Fourth, he found that claimant's impairment prevented him from performing his past relevant work as a construction worker and a crew member at a fast food restaurant. Finally, the ALJ concluded that although claimant was limited to performing sedentary to light work, his impairments did not prevent him from doing any other work. Therefore, the ALJ found the claimant not disabled. Claimant takes issue on appeal with the ALJ's findings at steps three and five. He argues that his combined impairments "meet in severity the musculoskeletal listing criteria." Specifically, claimant argues that his hip injury meets the musculoskeletal impairment listed at section 1.03 of Appendix 1: "arthritis of a major weight-bearing joint (due to any cause)." While conceding that his wrist injury does not alone meet or equal a listed impairment, claimant argues that when the hip and wrist injury are evaluated in combination they meet or equal the severity of the impairment listed at section 1.03. Section 1.03 provides as follows: 1.03 Arthritis of a major weight-bearing joint _________________________________________ (due to any cause): __________________ With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With: A. Gross anatomical deformity of hip or knee (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or -11- 11 significant bony destruction and markedly limiting ability to walk and stand; or B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset. 20 C.F.R. Pt. 404, Subp. P, Appendix 1, 1.03. Claimant has the burden of demonstrating the existence of an impairment or combination of impairments that meet or equal the criteria in the Listing of Impairments at Appendix 1. See Dudley v. Secretary of Health and Human Services, 816 ___ ______ ______________________________________ F.2d 792, 793 (1st Cir. 1987). There is substantial evidence to support the ALJ's determination that claimant did not meet this burden. Section 1.03 of the listings requires a "gross anatomical deformity . . . markedly limiting ability to walk and stand." The ALJ specifically found that "since about September 1990 the record fails to show ongoing use of [a] cane [to assist ambulation]." In addition, the ALJ noted that "[d]uring the hearing on July 8, 1991 the claimant was observed to walk without the use of a cane" and that he "stood for 10 minutes early in the hearing." The medical evidence, summarized above, supports the ALJ's finding that the injury did not meet or equal the listing criteria. Claimant was observed to limp a little at his April, 1990 visit to the SIF and at his September, 1990 visit claimant used a cane. Dr. Pinero's June, 1990 examination of claimant, however, indicated that he had full -12- 12 range of motion in his hip, although external rotation was painful. In November, 1990, Dr. Torres reported that claimant had full range of motion and muscle strength in his hip and that claimant was "walking adequately unassisted." In February, 1991, Dr. Pinero reported that claimant had full flexion, internal rotation and abduction. Finally, on March 20, 1991, an SIF report notes that "no difficult gait was observed." Claimant's wrist injury cannot, even in combination with his hip injury, satisfy the requirements of 1.03. Therefore, the district judge did not err in affirming the ALJ's determination that claimant's impairment did not meet or equal a listed impairment.6 Claimant argues that the ALJ erred in not obtaining the assistance of a medical expert in order to assess the severity of claimant's physical limitations and whether they equal a listed impairment. It does not require medical expertise, however, to determine whether claimant is markedly limited in his ability to walk or stand, a requirement of 1.03 of the listings. Therefore, the ALJ did not err in making this commonsense judgment without the assistance of a ____________________ 6. Claimant also suggests that his impairments meet or equal the impairments listed at sections 1.04 and 1.12 of the Appendix. Section 1.04, however, requires arthritis of one major joint in each of the upper extremities. Section 1.12 ____ requires fracture of an upper extremity where functional use is not restored within twelve months. The medical evidence supports the ALJ's conclusion that these requirements were not met. -13- 13 medical expert. (Cf. Gordils v. Secretary of Health and ___ _______ ________________________ Human Services, 921 F.2d 327, 329 (1st Cir. 1990) ("the ______________ Secretary is not precluded from rendering commonsense judgments about functional capacity based on medical findings, as long as the Secretary does not overstep the bounds of a lay person's competence and render a medical judgment."). Claimant also alleges on appeal that the ALJ did not adequately consider his allegations of disabling pain. The ALJ found that claimant's allegations of pain were "credible so as to preclude arduous exertion, repeated bending, continuous standing and walking. Otherwise they are not of such severity and frequency as to preclude substantial gainful activity." The ALJ considered claimant's testimony in light of the other record evidence. Claimant testified that he sometimes experiences shooting pains extending from his back to his hip. He stated that he was taking pain medication ("Dolabid") two or three times a day and that it sometimes helped. Claimant also testified that the pain in his back and hip was constant and that it hurt his arm to lift twenty pounds or to continually carry lighter weights. He stated that it hurt his wrist to grasp something. The record contains objective medical evidence of impairments that could reasonably be expected to cause claimant pain. Dr. Pinero diagnosed claimant with post- -14- 14 traumatic degenerative joint disease in his left hip. This condition is "accompanied by pain and stiffness, particularly after prolonged activity." R. Sloane, The Sloane Dorland ___________________ Annotated Medical-Legal Dictionary (1987). Dr. Pinero also __________________________________ noted that avascular necrosis can occur with degenerative joint disease and cause pain. Dr. Torres diagnosed bursitis, which has been characterized as a medical condition "reasonably capable of causing disabling pain." Sewell v. ______ Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). Nonetheless, as _____ the ALJ noted in his decision, "[t]he record fails to establish significant or persistent weakness or functional limitation." The ALJ concluded that claimant's allegations of severe and disabling pain were "unsupported by the objective findings which fail to disclose severe osseous or neurological involvement or residuals." Where allegations of disabling pain are unsupported by objective medical evidence, the ALJ is required to obtain detailed descriptions of claimant's daily activities, functional restrictions, medication and other treatment for pain, frequency and duration of pain, and precipitating and aggravating factors. See Avery v. Secretary of Health and ___ _____ ________________________ Human Services, 797 F.2d at 23; SSR 88-13. The ALJ _______________ thoroughly questioned claimant in accordance with the above requirements. Claimant testified at his hearing before the ALJ that he used his right hand for eating, dressing, writing -15- 15 and shaving. He further testified that he sometimes lifted his two-year-old child. In his application for disability payments, claimant described his daily activities as including house cleaning, taking out the garbage, shopping, doing the dishes, visiting friends, attending church and the movies. At his hearing, however, claimant testified that typically he spent all day watching television. The ALJ specifically found that claimant's allegations of severe and disabling pain were not credible. This credibility determination, especially when supported by specific findings, is entitled to deference. Fustaglia v. _________ Secretary of Health and Human Services, 829 F.2d 192, 195 ________________________________________ (1st Cir. 1987). In addition to the lack of supportive objective medical evidence, the ALJ also found that the allegations were unsupported by claimant's "conservative treatment, his demeanor, his daily activities, and other evidence of record." The ALJ found claimant's allegations of pain credible only to the extent that they "preclude arduous exertion, repeated bending, continuous standing and walking." He therefore made the following determination regarding claimant's residual functional capacity: The claimant has the residual functional capacity to perform the physical exertional requirements of work except for arduous physical exertion, repetitive, bending, lifting or carrying in excess of 20 lbs or continuous standing or sitting. -16- 16 This conclusion is substantially supported by the medical evidence summarized above. In May, 1990, claimant told a treating physician at the SIF that he used his wrist for activities of daily living, although he could not lift heavy objects. A May, 1990 report from the SIF indicated that claimant's grip strength and range of motion had increased. An x-ray report from 1991 indicated "no evidence of recent fracture, soft tissue calcifictions or other complication" in claimant's wrist. After an examination of claimant on November 14, 1990, Dr. Torres reported that the pain in his hip was intermittent. A March, 1991 report from SIF indicated no edema and no deficit in flexion-extension of claimant's wrist. A February, 1991 report by treating physician Dr. Pinero indicated that claimant had full flexion, internal rotation and abduction in his hip, and 40% external rotation. The RFC form completed by a nonexamining physician on March 21, 1991, also supports the ALJ's findings. The RFC reveals that claimant occasionally can lift and carry fifty pounds and frequently can lift and carry twenty-five pounds. He can only occasionally climb, balance, kneel and crawl. However, he can sit, stand and walk for up to six hours per work day. He is limited in the weight that he can push and/or pull to ten pounds because of his wrist injury. The RFC also noted that claimant's gross manipulation abilities -17- 17 were limited somewhat by his wrist injury, but that his reaching and fine manipulation abilities were not limited. The vocational expert testified that there were jobs existing in significant numbers in the national economy which claimant can perform, given his residual functional capacity, age, education and work experience. These included the following light to sedentary semi-skilled jobs: cashier, counter clerk, shipping clerk and general office clerk. Having reviewed the entire record, we conclude that the ALJ's findings are supported by substantial evidence, including medical evidence from claimant's treating physicians, claimant's testimony at the hearing before the ALJ, the RFC prepared by a non-examining physician and the testimony of the vocational expert. Where the facts permit diverse inferences, we will affirm the Secretary so long as the inferences drawn are supported by the evidence. Rodriguez Pagan v. Secretary of Health and Human Services, _______________ ________________________________________ 819 F.2d 1,3 (1st Cir. 1987). Therefore, the district court did not err in affirming the ALJ's decision denying disability payments. For the foregoing reasons, the judgment of the district court is affirmed. _________ -18- 18